# In the United States Court of Federal Claims

No. 14-457 T

Filed: June 30, 2016

| | |
|---|---|
| ************************************* | "Full Payment" Rule; |
| DEAN A. BYRNE, | 26 U.S.C. § 6320 (Notice and Opportunity for Hearing upon Filing of Notice of Lien); |
| Plaintiff, | 26 U.S.C. § 6330 (Notice and Opportunity for Hearing Before Levy); |
| v. | 26 U.S.C. § 6511(a) (Period of Limitation on Filing Tax Refund Claim); |
| THE UNITED STATES, | 26 U.S.C. § 6532(a)(1) (Two-Year Statute of Limitations on Tax Refund Suits); |
| Defendant. | 26 U.S.C. § 6532(a)(4) (Reconsideration After Mailing of Notice of Disallowance); |
| ************************************* | 26 U.S.C. § 6672 (Failure to Collect and Pay Over Tax, or Attempt to Evade or Defeat Tax); |
| | 26 U.S.C. § 7422(a) (Civil Actions for Refund); |
| | Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (Subject Matter Jurisdiction). |

**Ethelyn A.B. Boak**, Lynn Boak, Attorney at Law LLC, Cheyenne, Wyoming, Counsel for Plaintiff.

**Jennifer Dover Spriggs**, United States Department of Justice, Tax Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS TAX REFUND CASE**

**BRADEN**, *Judge*.

I.     **RELEVANT FACTUAL BACKGROUND.**[1]

On October 4, 2005, the Internal Revenue Service ("IRS") informed Mr. Dean A. Byrne that it intended to assess a Trust Fund Recovery Penalty ("TFRP") against him, under 26 U.S.C. § 6672(a),[2] because he was the person responsible for collecting taxes on behalf of Sundance Systems, Inc. ("Sundance") for three taxable periods in 2004, *i.e.*, June 30, 2004, September 30, 2004, and December 31, 2004.  Gov't Ex. 4 (IRS letter 1153).

On December 2, 2005, the IRS received a "Formal Written Protest" from Mr. Byrne, wherein he explained that he held a position with Sundance but "had nothing to due [sic] with payroll or payroll taxes."  Gov't Ex. 5.  Thereafter, in an undated letter, the IRS confirmed receipt of Mr. Byrne's December 2, 2005 "Formal Written Protest," and informed him that he did not provide "any new facts which would alter [the IRS's] previous conclusion."  Gov't Ex. 6.  The IRS also indicated that Mr. Byrne's Protest would be forwarded to the IRS's Appeals Office for further consideration.  Gov't Ex. 6.

On October 17, 2007, the IRS's Appeals Office informed Mr. Byrne that his protest was reviewed and a preliminary determination was made that Mr. Byrne "had the duty, status and authority, whether exercised or not . . . to collect, truthfully account for and pay over the tax," under Section 6672(a) and consequently was liable for a TFRP regarding Sundance's unpaid employment taxes.  Gov't Ex. 8 (October 17, 2007 IRS letter to Mr. Byrne explaining the factual and legal basis for why he was determined to be a "responsible person" under 26 U.S.C. § 6672). Mr. Byrne also was informed that, if he wanted to submit additional information, he should do so by November 19, 2007.  Gov't Ex. 8 at A36.

---

[1] The facts discussed herein were derived from: the May 28, 2014 Complaint ("Compl."); the Appendix to the Government's December 8, 2015 Motion To Dismiss ("Gov't Exs. 1–21"); the Exhibits attached to Plaintiff's February 19, 2016 Response ("Pl. Exs."); and the Exhibits attached to the Government's May 5, 2016 Reply ("Gov't Exs. 22–24").  *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged.").

[2] Section 6672(a) of the Internal Revenue Code provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

On, or about, February 5, 2008,[3] the IRS's Appeals Office informed Mr. Byrne that "the case will be closed unagreed and an assessment will be made." Gov't Ex. 9. Mr. Byrne also was informed that after the assessed amount was paid, he could file a claim for refund with the IRS within two years from the time the tax is paid. Gov't Ex. 9. In addition, Mr. Byrne was advised that, if the IRS rejected his refund claim, he must file a lawsuit within two years after receiving the IRS's notice of disallowance. Gov't Ex. 9.

On March 3, 2008, the IRS assessed a TFRP against Mr. Byrne in the amount of $87,445.26 for the taxable period ending June 30, 2004; $89,257.34 for the taxable period ending September 30, 2004; and $45,610.51 for the taxable period ending December 31, 2004. Gov't Exs. 1–3. In an undated appeal letter, Mr. Byrne requested that the IRS reconsider the TFRP assessment. Gov't Ex. 17. The IRS did not make any changes to the TFRP assessment. Gov't Exs. 1–3.

On July 7, 2008, the IRS applied a $1,200.00 credit from Mr. Byrne's 2007 income tax return to the TFRP assessment for the taxable period, ending June 30, 2004. Gov't Ex. 1, at A6.

On October 25, 2008, Mr. Byrne filed three Forms 843, Claim for Refund, for Sundance's taxable periods, ending June 30, 2004, September 30, 2004, and December 31, 2004. Gov't Exs. 10, 12, 14. For the June 30, 2004 taxable period, Mr. Byrne filed for a refund or abatement in the amount of $1,200.00. Gov't Ex. 10. Mr. Byrne's refund claim forms for the taxable periods ending September 30, 2004 and December 31, 2004 did not specify an amount due, but referenced the $1,200.00 July 7, 2008 credit listed on Mr. Byrne's refund claim form for the taxable period ending June 30, 2004. *Compare* Gov't Ex. 10, *with* Gov't Exs. 12, 14.[4] Enclosed with the October 25, 2008 Forms 843, Mr. Byrne included a document titled "Explanation for filing of the 843 Forms," wherein he stated that, he now has documentation to support that he should not be considered a person responsible for collecting, accounting for and paying over taxes for Sundance. Gov't Exs. 11, 13, 15.

In a February 24, 2009 letter to Mr. Byrne, the IRS confirmed receipt of Mr. Byrne's October 25, 2008 refund claims for the TFRP assessment for the taxable periods ending June 30, 2004, September 30, 2004, and December 31, 2004. Gov't Ex. 16.

In a March 5, 2009 letter to Mr. Byrne, the IRS disallowed Mr. Byrne's request for a refund of $1,200.00 and abatement of the outstanding TFRP assessment for the taxable periods ending June 30, 2004, September 30, 2004, and December 31, 2004. Gov't Ex. 18. In addition, the March 5, 2009 letter stated:

> This is your legal notice that your second claim for refund and abatement is disallowed.

---

[3] This date appears to have been stamped on the IRS Appeals Office letter, but due to copying, it is difficult to make out the precise day.

[4] The June 27, 2014 Certificates of Assessment and Payments for the taxable periods ending September 30, 2004 and December 31, 2004, do not indicate that Mr. Byrne made any payments on those assessments. Gov't Exs. 1–3.

> \* \* \*
>
> If you wish to bring suit or proceedings for recovery of any tax, penalties, and other moneys that were paid and for which this notice of disallowance is issued, you may do so by filing suit with either the United States District Court having jurisdiction or the United States Court of Federal Claims. The law permits you to do so within two years of the mailing date of this letter. You are not required to go to Appeals prior to filing suit. Please note that Appeals review of a disallowed claim does not extend the two-year period for filing suit; however, it may be extended by mutual agreement.

Gov't Ex. 18.

On April 26, 2013, a federal tax lien notice was filed against Mr. Byrne's assets located in Laramie and Natrona Counties, Wyoming. Compl. ¶ 12.

In a July 11, 2013 letter to Mr. Byrne, the IRS confirmed receipt of Mr. Byrne's request for a Collection Due Process ("CDP") hearing[5] and advised him of a

> telephone conference call . . . on August 15, 2013 at 1:00 p.m. MDT. This call will be your primary opportunity to discuss . . . the reasons you disagree with the collection action and/or to discuss alternatives to the collection action.
>
> \* \* \*
>
> During the hearing, [the IRS] must consider:
>
> - [W]hether you owe the amount due, but only if you have not otherwise had an opportunity to dispute it with Appeals or did not receive a statutory notice of deficiency.
>
> \* \* \*
>
> **Regarding the liability you are raising:**
>
> <u>You are not able to raise the underlying liability because you already had a chance to dispute the liability subject to this proceeding.</u>
>
> You requested an appeal for the proposed [TFRP] on December 2, 2005. Your case was assigned to an Appeals Officer on February 24, 2006 and closed out of appeals on February 6, 2008 with the proposed assessment being sustained.

---

[5] Under 26 U.S.C. § 6320, a person has a right to request a hearing before the IRS files a tax lien on their property. *See* 26 U.S.C. § 6320.

> For your liability to be redressed you will need to file a Form 843, Claim for Refund and Abatement of Tax for each period.
>
> The liability subject to this proceeding will not be readdressed during this CDP hearing.

Pl. Exs. 71–72.

On July 24, 2013, Mr. Byrne filed a second set of Forms 843 with the IRS, requesting a refund or abatement of the TFRP assessment for the taxable periods June 30, 2004, September 30, 2004, and December 31, 2004. Compl. ¶ 15; *see also* Gov't Exs. 19–20.[6] For the taxable period ending June 30, 2004, Mr. Byrne requested a refund or abatement in the amount of $72,339.43. Gov't Ex. 19. For the taxable period ending September 30, 2004, Mr. Byrne requested a refund or abatement in the amount of $89,257.34. Gov't Ex. 20. For the taxable period ending September 31, 2004, Mr. Byrne requested a refund or abatement in the amount of $45,610.51. Gov't Ex. 21. Attached to each Form 843 was a $100 check to cover the filing fee. Compl. ¶ 15.[7] The June 27, 2014 IRS Certificates of Assessment and Payments for the taxable periods, however, do not reflect receipt of the Forms 843 or any payments. Gov't Exs. 1–3.

On August 15, 2013, the IRS held a CDP hearing, at which Mr. Byrne agreed to begin paying the remaining TFRP assessment due through automatic withdrawals from his bank account. Compl. ¶ 14.

## II. PROCEDURAL HISTORY.

On May 28, 2014, Mr. Dean A. Byrne ("Plaintiff") filed a Complaint ("Compl."), alleging that he was not the responsible party for Sundance's unpaid taxes, and seeking a full refund of the payments made—*i.e.*, "over $60,000," in addition to $300 for the checks rendered—and an abatement of the TFRP assessed against him. Compl. ¶ 16. In addition, the May 28, 2014 Complaint requests that the liens on his real and personal property be released. This case was assigned to the Honorable Eric G. Bruggink. On July 25, 2014, the Government filed a Motion For Extension Of Time to file an Answer that the court granted on July 28, 2014.

On August 12, 2014, the case was transferred to the undersigned judge, pursuant to Rule 40.1(b) of the Rules of the United State Court of Federal Claims ("RCFC").

On October 24, 2014, the Government filed an Answer and Counterclaim against Plaintiff for the TFRP assessment balance due, *i.e.*, $156,998.41. On November 6, 2014, Plaintiff filed an Answer to the Government's October 24, 2014 Counterclaim. On December 22, 2014, the parties filed a Joint Preliminary Status Report. On December 23, 2014, the court issued a Scheduling Order, adopting a discovery schedule requested by the parties.

---

[6] The Government contests the truthfulness of this allegation. Gov't Mot. at 7 n.2.

[7] The Government also contests the truthfulness of this allegation. Gov't Mot. at 7 n.2.

On October 1, 2015, the parties filed a Joint Motion For Leave To File A Rule 12(b)(1) Motion And For A Stay Of Discovery, that the court granted on October 5, 2015.

On December 8, 2015, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to RCFC 12(b)(1), together with Exhibits 1–21. On February 19, 2016, Plaintiff filed Response ("Pl. Resp."). That same day, Plaintiff filed a Motion For Leave To File 26 Exhibits in response, attaching a set of those Exhibits.[8] On February 25, 2016, the court granted Plaintiff's February 19, 2016 Motion For Leave. On May 5, 2016, the Government filed a Reply ("Gov't Reply"), attaching three additional exhibits.

### III. DISCUSSION.

#### A. Jurisdiction.

The Tucker Act authorizes the United States Court of Federal Claims to adjudicate tax refund claims. *See* 28 U.S.C. § 1491(a)(1).[9] To file a federal tax refund suit in this court, a plaintiff first must file a claim for refund with the IRS, within the time period proscribed by 26 U.S.C. §

---

[8] Plaintiff's February 19, 2016 Appendix to the February 19, 2016 Response is not chronologically arranged nor arranged in an organized manner. For example, contrary to the Rules of the United States Court of Federal Claims, the first exhibit is labeled "870," whereas the second exhibit is labeled "DEF-001." *See* RCFC 5.4(2)(G) ("[A]ny appendix to the brief or memorandum [must be] numbered consecutively within itself to enable the court to find and read the material more easily and, if set forth in a volume separate from the brief or memorandum, containing a table of contents with a description of every item or exhibit being reproduced and the page number at which the item or exhibit appears."). In addition, at least one exhibit that Plaintiff cites in the February 19, 2016 Response is not included in the set of filed exhibits. *See, e.g.*, Pl. Resp. at 5 (citing a missing "Exhibit DEF-008"). Plaintiff's Response also did not include: a table of contents, identifying the "specific contents" of the Appendix and listing a description of each exhibit reproduced in the Appendix; a table of authorities; "a concise statement of each questions presented;" or "a concise conclusion, indicating the relief sought." RCFC 5.4(2). Because of these deficiencies, the court was unable to verify some of the statements made by Plaintiff, but the court has determined that these deficiencies are not determinative of the substantive issues.

[9] Section 1491(a)(1) of the Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort[.]

28 U.S.C. § 1491(a)(1).

6511(a).[10]  *See United States v. Dalm*, 494 U.S. 596, 602 (1990) ("[U]nless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' . . . may not be maintained in any court.") (citations omitted).  This is a jurisdictional prerequisite that must be satisfied before a suit for tax refund can be adjudicated by this court.  *See* 26 U.S.C. § 7422(a).[11]  In addition, before filing suit, a taxpayer must pay the full amount of the tax alleged to be due.  *See Flora v. United States*, 357 U.S. 63, 72–73 (1958) ("*Flora I*") ("[R]efund suits [can] only be maintained upon full payment of the tax alleged to be due."), *aff'd on reh'g*, 362 U.S. 145 (1960) ("*Flora II*").  There is an exception to the "full payment" rule that applies when divisible taxes are at issue, *i.e.*, excise and employment taxes.  *See Flora II*, 362 U.S. at 175 n.38 ("[E]xcise tax assessments may be divisible into a tax on each transaction or event, so that the full-payment rule would probably require no more than payment of a small amount."); *see also Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991) ("In *Flora* [*II*], the [United States] Supreme Court [held] that the payment of the excise tax on a single transaction would satisfy the full payment rule. . . .  Accordingly, divisible taxes such as excise and employment taxes have been considered exceptions to *Flora* [*II*].") (citation omitted).  Therefore, the United States Court of Appeals for the Federal Circuit has recognized that "partial payment" of a § 6672 assessment is sufficient, so long as the payment includes at least the "income and [Federal Insurance Contributions Act] taxes withheld from one employee."  *Godfrey v. United States*, 748 F.2d 1568, 1573 (Fed. Cir. 1984).

---

[10] Section 6511(a) of the Internal Revenue Code provides:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.  Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

26 U.S.C. § 6511(a).

[11] Section 7422(a) of the Internal Revenue Code provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary*, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added).

If the claim is denied by the IRS and the taxpayer timely files suit, the United States Court of Federal Claims has jurisdiction to adjudicate the tax refund claim. *See* 26 U.S.C. § 6532(a)(1);[12] *see also* 28 U.S.C. § 1346(a)(1). Section 6532(a)(1) sets forth a two-year statute of limitations on tax refund suits after the IRS issues a notice of claim disallowance. *See RHI Holding, Inc. v. United States*, 142 F.3d 1459, 1460 (Fed. Cir. 1998) ("[T]he taxpayer has two years from the date the notice of disallowance of the refund claim is mailed to file suit."); *see also Rohmann v. United States*, 25 Cl. Ct. 274, 284 (1992) ("A complaint in the Claims Court for a tax refund may not be filed more than two years after the mailing of the notice of disallowance.").

Section 6532(a)(4) also provides that:

> Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance *shall not operate to extend the period within which suit may be begun*.

26 U.S.C. § 6532(a)(4) (emphasis added).

The sole exception to this rule is found in subsection (a)(2) of Section 6532, which states that "[t]he 2-year period . . . shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary." 26 U.S.C. § 6532(a)(2).

### B. Standard Of Review For Motion To Dismiss Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defense[] by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Plaintiff bears the burden of proof to establish subject matter jurisdiction, and must do so by a preponderance of the evidence. *See Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1376 (Fed. Cir. 1998); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put

---

[12] Section 6532(a)(1) of the Internal Revenue Code provides that:

> No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section . . . nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1).

in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### C. Whether The Court Has Jurisdiction To Adjudicate The Tax Refund Claims Alleged In The May 28, 2014 Complaint.

#### 1. The Government's Argument.

The Government argues that Plaintiff failed to satisfy the burden of establishing subject matter jurisdiction by a preponderance of the evidence, because Plaintiff's tax refund suit was filed at the United States Court of Federal Claims outside the limitations period. Gov't Mot. at 8. Two refund claims are at issue; one was filed on October 25, 2008; the other was purportedly filed on July 24, 2013—neither of which provide this court with jurisdiction. Gov't Mot. at 8–11

Both dates exceed the statute of limitations imposed by Section 6532(a)(1) of the Internal Revenue Code. Gov't Mot. at 9–11. Section 6532(a)(1) requires a plaintiff to file a tax refund claim no later than two years from the date that the IRS mails plaintiff a notice of disallowance. Gov't Mot. 9–10 (citing *Rohmann*, 25 Cl. Ct. at 284 ("A complaint in the Claims Court for a tax refund may not be filed more than two years after the mailing of the notice of disallowance.")). The IRS mailed Plaintiff's notice of disallowance on March 5, 2009. Gov't Mot. at 11. Plaintiff's Complaint was filed on May 28, 2014, *i.e.*, "more than 3 years after the statute of limitations for filing suit under [Section] 6532(a)(1) had expired." Gov't Mot. at 11. Therefore, Plaintiff's tax refund suit was not timely filed and the court must dismiss the May 28, 2014 Complaint for lack of subject matter jurisdiction. Gov't Mot. at 9, 11.

Plaintiff's purported July 24, 2013 refund claims contesting the TFRP assessment on which the October 25, 2008 refund claims were based, also does not satisfy Section 6532(a)(1). Gov't Mot. at 10–11. Specifically, "a second refund claim (or multiple claims) asserting the same grounds as the first does not extend the two-year period of [Section] 6532 in which a refund suit must be filed." Gov't Mot. at 10 (citing *Haber v. United States*, 17 Cl. Ct. 496, 509 (1989) ("[T]he taxpayer cannot extend the statute of limitations by filing a second claim on grounds substantially similar to those used in the first claim."), *aff'd*, 904 F.2d 45 (Fed. Cir. 1990); *see also B. Altman & Co. v. United States*, 69 Ct. Cl. 721, 727 (1930) ("[The statute] does not contemplate the repetition of contentions for refund in such a way and at such times as to toll the running of the limitation period.")). Otherwise, "duplicative refund claims could be used to stretch out the limitations period indefinitely, in opposition to the terms and purpose of [Section] 6532." Gov't Mot. at 10–11. Therefore, Plaintiff's purported July 24, 2013 claims cannot extend the statute of limitations for filing suit under Section 6532(a), because they "merely repeat[] the grounds set forth in [Plaintiff's] first claims which the IRS had previously formally disallowed." Gov't Mot. at 11.

#### 2. Plaintiff's Response.

Plaintiff responds that the May 28, 2014 Complaint was timely filed, because March 5, 2009 is not the triggering date for the two-year statute of limitations period. Pl. Resp. at 9. Plaintiff received four different notices from the IRS, each of which informed him that he could contest his liability: (1) letter 1153, dated October 4, 2005; (2) letter, dated February 5, 2008; (3) letter, dated

March 5, 2009; and (4) CDP hearing letter, dated July 11, 2013. Pl. Resp. at 9–10. During the August 15, 2013 CDP hearing, Plaintiff never was given an opportunity to dispute the TFRP assessment, as required by 26 U.S.C. § 6330(c)(2)(B),[13] although Plaintiff received a notice to the contrary. Pl. Resp. at 9–10. Because the IRS failed to afford Plaintiff the opportunity to dispute meaningfully the underlying tax liability, "in form or in substance, it is a procedural violation" that the court has jurisdiction to review *de novo*. Pl. Resp. at 10–11 (citing *Mason v. Comm'r*, 132 T.C. 301, 317–18 (2009) ("A section 6672(b)(1)[14] notice provides a taxpayer with the means for protesting a proposed trust fund penalty assessment administratively with the Commissioner. It follows that where a taxpayer has not received a section 6672(b)(1) notice, then that taxpayer has missed an opportunity to dispute the underlying tax liability.")).

Plaintiff identifies two other procedural deficiencies that allegedly provide the court with jurisdiction to adjudicate the claims alleged in the May 28, 2014 Complaint. First, the Forms 843, dated "July 7, 2008,"[15] were "invalid and therefore could not trigger the statute of limitations," because: (1) "the forms did not refer to the correct type of tax;" (2) the forms "were not accompanied by the required fee;" (3) two of the forms did not request a refund of any amount; and (4) "[t]he form designated for the second quarter of 2004 requests only a refund and abatement of $1,200.00." Pl. Resp. at 12. Second, the IRS never established that the March 5, 2009 notice of disallowance was sent by certified mail or that Plaintiff received it. Pl. Resp. at 12. Specifically, "[t]he administrative file, which was located by the IRS . . . , does not contain [United States Postal Services] Form 3811 denoting mailing and receipt." Pl. Resp. at 12. Although lack of proper notice does not negate the TFRP assessment, it demonstrates that Plaintiff was not given an opportunity to dispute his liability prior to the 2013 CDP hearing. Pl. Resp. at 12. Because the IRS cannot establish "mailing or receipt of the notice, the IRS's refusal to let [Plaintiff] dispute

---

[13] Section 6330(c)(2)(B) of the Internal Revenue Code provides that:

The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

26 U.S.C. § 6330(c)(2)(B).

[14] Section 6672(b)(1), provides:

No penalty shall be imposed under subsection (a) unless the Secretary notifies the taxpayer in writing by mail to an address as determined under section 6212(b) or in person that the taxpayer shall be subject to an assessment of such penalty.

26 U.S.C. § 6672(b)(1).

[15] Although Plaintiff references refund claims dated July 7, 2008, the date listed on the copies of the refund claims submitted by both parties was October 25, 2008. Therefore, the court considers Plaintiff's reference to July 7, 2008 to be a typographical error.

the underlying tax liability at his CDP hearing was a procedural error that [the] court must adjudicate." Pl. Resp. at 12.

In addition, in light of the invalidity of the 2008 refund claims, February 22, 2013[16]—the date of the Notice of Intent to Levy and Right to Hearing—is the date that triggers the statute of limitations period. Pl. Resp. at 13. After receiving the February 22, 2013 Notice, Plaintiff requested a CDP hearing; when the IRS confirmed receipt on July 11, 2013, the IRS informed Plaintiff that it "would not hear evidence or argument related to the underlying tax liability," but if Plaintiff wanted the IRS to address liability, he would need to file a Form 843 for each taxable period at issue. Pl. Resp. at 13. Because the May 28, 2014 Complaint was filed "eleven months after the last notice advising [Plaintiff] that he could revisit his TFRP liability only by filing claims," the court has jurisdiction to review Plaintiff's tax refund claims. Pl. Resp. at 8 (citing Pl. Exs. 71–73).

Even if the court determines that the March 5, 2009 notice of disallowance was valid, the grounds for the July 24, 2013 refund claims were "completely different." Pl. Resp. at 14. Specifically, the basis of the October 25, 2008 refund claims, *i.e.*, "abatement of [Plaintiff's] $1,200.00 [2007 refund tax] retained by the IRS and applied to the TFRP," was different from the July 24, 2013 refund claims. Pl. Resp. at 13. When Plaintiff filed the 2013 refund claims, additional payments were made to the IRS, including: a $300.00 filing fee, submitted with the 2013 Forms 843; Plaintiff's $1,280.00 2009 refund tax, that was seized on April 15, 2010; Plaintiff's $3,301.00 2011 refund tax, that was seized on April 15, 2012; and the $46,173.77 amount of proceeds from the sale of Plaintiff's house. Pl. Resp. at 13 (citing Pl. Exs. 74, 244). In addition, under installment agreements executed with the IRS, on November 1, 2013 and December 1, 2013, Plaintiff paid the IRS two installments in the amount of $1,948.00 and $2,000.00. Pl. Resp. at 13. Accordingly, Plaintiff "had a lot more funds at stake by the time of his CDP hearing and even more at stake now." Pl. Resp. at 14. None of these additional payments were made to the IRS in 2008, "nor had [Plaintiff] requested abatement of the TFRP." Pl. Resp. at 14. Plaintiff requested only a refund of $1,200.00. Pl. Resp. at 14.

Finally, because Plaintiff received "at least four notices of opportunity to file a claim for refund and abatement and right to file suit," the IRS gave him cause to believe that the limitations period under 26 U.S.C. § 6532(a) was tolled. Pl. Resp. at 14–15 (citing *Se. Bank of Orlando v. United States*, 230 Ct. Cl. 277, 286 (1982) (holding that, where the IRS mailed two notices of disallowance of claims, "the second disallowance notice . . . was, in essence, an agreement to extend the time deadline"). Therefore, the court has jurisdiction to determine, *de novo*, whether Plaintiff is liable for the TFRP. Pl. Resp. at 15.

### 3. The Government's Reply.

The Government first replies that the two-year statute of limitations period for a tax refund under 26 U.S.C. § 6532(a) commenced on March 5, 2009, when the IRS provided Plaintiff with the notice of disallowance. Gov't Reply at 3 (citing *Rohmann*, 25 Cl. Ct. at 284 ("A complaint in

---

[16] This is the first time this date is mentioned and Plaintiff did not proffer the letter for the court's review.

the Claims Court for a tax refund may not be filed more than two years after the mailing of the notice of disallowance.")). The March 5, 2009 notice of disallowance was sent to Plaintiff by "Certified Mail," and was the only notice that the IRS sent to Plaintiff disallowing his October 25, 2008 refund claims. Gov't Reply at 3. Plaintiff admits that he received the March 5, 2009 notice of disallowance. Gov't Reply at 4 (citing Pl. Resp. at 6). In addition, the March 5, 2009 notice of disallowance stated that the IRS disallowed Plaintiff's claims for "'refund and abatement of $1,200.00' for the tax periods at issue." Gov't Reply at 3–4.

Second, although Plaintiff attempts to demonstrate that the March 5, 2009 notice of disallowance was invalid, because Plaintiff was denied an IRS Appeals conference, this argument is without merit, because Plaintiff submitted a "Formal Written Protest" to the IRS on December 2, 2005, wherein he explained his disagreement with the IRS's proposed assessment. Gov't Reply at 8 (citing Gov't Ex. 5). The IRS reviewed Plaintiff's Protest, but did not agree. Gov't Reply at 8 (citing Gov't Ex. 6). Nevertheless, the IRS forwarded Plaintiff's Protest to the IRS's Appeals Office, which also determined that Plaintiff was required to collect, truthfully account for and pay over taxes for Sundance, and closed Plaintiff's case as "unagreed." Gov't Reply at 8 (citing Gov't Ex. 7, 8 at A34–35; Gov't Ex. 9). Following the March 3, 2008 assessment, Plaintiff forwarded a "Trust Fund Recovery Assessment Appeal" to the IRS, arguing that the IRS was wrong in determining that Plaintiff was a responsible party. Gov't Reply at 8 (citing Gov't Ex. 17). These acts evidence that "Plaintiff clearly participated in the IRS Appeals process," although, taxpayer "[p]articipation in the IRS Appeals process is voluntary and taxpayers can choose to skip the appeals process entirely." Gov't Reply at 9 (citing DEP'T OF THE TREASURY, INTERNAL REVENUE SERV., YOUR APPEAL RIGHTS AND HOW TO PREPARE A PROTEST IF YOU DON'T AGREE (1999)). Therefore, Plaintiff's participation in the appeals process is not relevant to the validity of the IRS's March 5, 2009 notice of disallowance. Gov't Reply at 9.

Third, each of Plaintiff's October 25, 2008 refund claims identified the relevant taxable periods, the type of tax involved, and the applicable penalty involved, *i.e.*, "6672." Gov't Reply at 6 (citing Gov't Exs. 10, 12, 14). In addition, each of the 2008 claims for refund referred to a July 7, 2008 credit, *i.e.*, the $1,200 credit that was transferred from Plaintiff's 2007 income tax refund and applied to the TFRP assessed. Gov't Reply at 7 (citing Gov't Ex. 1). The IRS, however, did not note any deficiencies with the 2008 refund claims, but instead considered these claims "on the merits." Gov't Reply at 7 (citing *Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 297–98 (1945) (holding that a waiver of the rules may be found, where "the evidence [is] clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission"); *see also Tucker v. Alexander*, 275 U.S. 228, 231 (1927) ("If the Commissioner is not deceived or misled by the failure to describe accurately the claim . . . it may be more convenient for . . . the claim [to] be disposed of upon its merits[.]")).

Fourth, the March 5, 2009 notice of disallowance, on its face, states that it was sent to Plaintiff by "Certified Mail," and the IRS confirmed that the March 5, 2009 notice of disallowance was issued to Plaintiff in accordance with "standard IRS practices and procedures with respect to the mailing of notices of disallowance by certified mail." Gov't Reply at 4 (citing Gov't Ex. 22 at ¶¶ 2–3). Moreover, "it is well-established that if the IRS properly sends a notice of disallowance to the taxpayer by certified mail, the two-year period for filing suit runs from the date the notice was mailed regardless of whether the taxpayer actually received the notice." Gov't Reply at 5 (citing *Rosser v. United States*, 9 F.3d 1519, 1522 (11th Cir. 1993) ("[T]he statutory period for

bringing suit begins to run from the date that the IRS mails, by certified or registered mail, a notice of disallowance . . . regardless of whether the taxpayer actually receives the notice.")). Even if a notice of disallowance was not properly sent by certified mail, such a deficiency does not automatically render the notice ineffective to trigger the commencement of the statute of limitations period. Gov't Reply at 5 (citing *Breland v. United States*, 2011 WL 4345300, at *7 (N.D.N.Y. 2011) ("[A] notice of disallowance that is received cannot be challenged on the grounds that the method of service was deficient.")).

Fifth, the CDP proceeding provided Plaintiff with an opportunity to contest the proposed lien. Gov't Reply at 13. If a taxpayer is dissatisfied with the outcome of a CDP hearing, the taxpayer must seek judicial review in the United States Tax Court. Gov't Reply at 13 (citing 26 U.S.C. § 6330(d)(1) ("The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination[.]"); *see also Mason v. Comm'r*, 132 T.C. at 316 ("The Tax Court recently acquired exclusive jurisdiction to review appeals from the Commissioner's lien and levy determinations made after October 16, 2006, irrespective of the type of tax making up the underlying liability.")). Therefore, Plaintiff's reliance on *Mason* is misplaced, because that case involved an appeal from an IRS determination from a CDP hearing over which the Tax Court had exclusive jurisdiction. Gov't Reply at 14 (citing *Mason*, 132 T.C. at 316–20). To the extent Plaintiff seeks to challenge the IRS's CDP hearing determination, "he has brought his challenge in the wrong court." Gov't Reply at 14.

Sixth, although Plaintiff contends that he received multiple notices of disallowance from the IRS, even if that were true, which the Government contests, whether or not Plaintiff received multiple notices of disallowance is not relevant to whether the two-year statute of limitations commences. Gov't Reply at 11–12. The IRS issued only one notice of disallowance. Gov't Reply at 11. Correspondence from the IRS, prior to assessment, is not a disallowance notice, because no IRS assessment was made. Gov't Reply at 11. Likewise, correspondence from the IRS concerning collection activities is not a disallowance notice, because no determination was made by the IRS regarding a refund claim. Gov't Reply at 12.

Seventh, to the extent Plaintiff seeks equitable relief, such relief is not authorized by 26 U.S.C. § 6532(a)(4). Gov't Reply at 12. Section 6532(a)(4) prohibits equitable considerations: "Any reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun." Gov't Reply at 12 (quoting 26 U.S.C. § 6532(a)(4)). In addition, Plaintiff's reliance on *Se. Bank of Orlando v. United States*, 230 Ct. Cl. 277 (1982), is misplaced, because in that case, the court relied on the doctrine of equitable estoppel to conclude that a taxpayer, who received two notices of disallowance, had two years from the date of the second notice of disallowance to file suit. *See id.* at 282–87. Subsequently, however, the United States Supreme Court held that Section 6511 is not subject to equitable considerations. *See United States v. Brockamp*, 519 U.S. 347, 348 (1997) (holding that equitable considerations under Section 6511 are contrary to the statute). Therefore, the United States Court of Appeals for the Federal Circuit subsequently has held that Section 6532(a)(4) "explicitly prohibits equitable considerations[,] based on the actions of the IRS after a notice is mailed." Gov't Reply at 13 (quoting *RHI Holding, Inc.*, 142 F.3d at 1462).

Eighth, an exception to the two-year filing deadline requires a written agreement between the taxpayer and the Secretary of the Department of the Treasury. Gov't Reply at 10 (citing *Marcinowsky v. United States*, 206 F.3d 1419, 1421 (Fed. Cir. 2000) ("26 U.S.C. § 6532(a)(2) authorizes the IRS to agree to extend the two-year period, the implementing regulation requiring that such extension be signed by or on behalf of both the taxpayer and the Service[.]")). In this case, Plaintiff did not demonstrate that he entered into such an agreement with the Secretary of the Department of the Treasury. Gov't Reply at 9. The July 11, 2013 letter, on which Plaintiff relies to demonstrate the existence of such an agreement, does not meet the requirements of a written agreement under the applicable regulations,[17] because it "is not an agreement or even an offer to extend the statute of limitations," nor is it signed by Plaintiff and the Secretary of the Department of the Treasury in accordance with 26 U.S.C. § 6532(a)(2). Gov't Reply at 11.

In the alternative, even if Plaintiff satisfied each of the prior Government objections, Plaintiff, nevertheless, failed to establish that the July 24, 2013 refund claims were "duly filed." Gov't Reply at 15 (citing 26 U.S.C § 7422(a); *see also United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) ("[A] claim for a refund must be filed with the [IRS] before suit can be brought[.]"); *Sun Chem. Corp. v. United States*, 698 F.2d 1203, 1206 (Fed. Cir. 1983) ("It is a well-established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit.")).[18] Instead, Plaintiff relies on copies of claims for refund, dated July 24, 2013, *see* Pl. Exs. 78–80, and three unsigned documents dated August 5, 2013,[19] *see* Pl. Exs. 883–85. Gov't

---

[17] Section 301.6532-1(b) of the Treasury Regulations provides:

> The 2-year period described in paragraph (a) of this section may be extended if an agreement to extend the running of the period of limitations is executed. The agreement must be signed by the taxpayer or by an attorney, agent, trustee, or other fiduciary on behalf of the taxpayer. If the agreement is signed by a person other than the taxpayer, it shall be accompanied by an authenticated copy of the power of attorney or other legal evidence of the authority of such person to act on behalf of the taxpayer. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature of a duly authorized officer of the corporation. The agreement will not be effective until signed by a district director, a director of an internal revenue service center, or an assistant regional commissioner.

26 C.F.R § 301.6532-1(b).

[18] Generally, a plaintiff must satisfy the full payment rule prior to commencing a tax refund suit. Gov't Reply at 16. That requirement, however, does not apply to this case, because the TFRP assessment at issue covers employment taxes. Gov't Reply at 16 (citing *Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991) ("Exceptions to the full payment rule have been recognized by the courts only where an assessment covers divisible taxes. . . . Accordingly, divisible taxes such as excise and employment taxes have been considered exceptions to *Flora* [*II*].") (citations omitted)).

[19] The Government also points out a discrepancy between the dates that Plaintiff purportedly filed the second set of refund claims, because the May 28, 2014 Complaint states that

14

Reply at 17.  Plaintiff also has not established that three unsigned documents were accurate copies of checks, because they do not identify the routing number of the financial institution, nor the name of the signee.  Gov't Reply at 17.  In addition, the affidavit submitted by John Pippinger, the bookkeeper for Plaintiff's counsel, does not state that Mr. Pippinger has any personal knowledge about the unsigned checks, including whether or not they were sent to the IRS.  Gov't Reply at 17 (citing Pl. Ex. 894).  In addition, Plaintiff's reliance on an unsigned letter from his counsel, dated August 5, 2013, that does not refer to Plaintiff nor the TFRP at issue, does not meet the standard of trustworthy evidence.  Gov't Reply at 18 (citing Pl. Ex. 77).  The United States Postal Service Form 3811, on which Plaintiff relies to establish that the unsigned letter was sent to the IRS, indicates that something was sent to the IRS in Denver, Colorado, but "the mailstop, suite number and zip code on the Form 3811 are different than that listed on the unsigned letter."  Gov't Reply at 18 (*comparing* Pl. Ex. 892, *with* Pl. Ex. 77).  And, the IRS verified and affirmed that it "did not find any record that the IRS received three checks for $100" from Plaintiff between July 1, 2013 and September 3, 2014.  Gov't Reply at 19 (quoting Gov't Ex. 23 (April 4, 2016 Affidavit of Ms. Maleia Parker, IRS Revenue Officer Advisor, Salt Lake City, Utah)).

Even if Plaintiff could establish that the July 24, 2013 claims were "duly filed," the two-year statutory period cannot be extended by filing additional claims for refund on the same basis as the original claims.  Gov't Reply at 16 (citing *Haber v. United States*, 17 Cl. Ct. 496, 509 (1989) ("[T]he taxpayer cannot extend the statute of limitations by filing a second claim on grounds substantially similar to those used in the first claim."), *aff'd*, 904 F.2d 45 (Fed. Cir. 1990) (same); *see also B. Altman & Co.*, 69 Ct. Cl. at 727 ("[The statute] manifestly does not contemplate the repetition of contentions for refund in such a way and at such times as to toll the running of the limitation period.")).

    **4.**    **The Court's Resolution.**

        **a.**    **The Court Does Not Have Jurisdiction To Adjudicate The October 25, 2008 Tax Refund Claims Alleged In The May 28, 2014 Complaint.**

On March 5, 2009, the IRS disallowed Plaintiff's October 25, 2008 request for a refund of $1,200.00 and abatement of the outstanding TFRP assessment with respect to Sundance's unpaid employment taxes for the taxable periods, ending in June 30, 2004, September 30, 2004, and December 31, 2004.  Gov't Exs. 1–3.  Plaintiff argues that the March 5, 2009 notice of disallowance was invalid, because Plaintiff did not have an opportunity to contest the TFRP assessment during the CDP hearing.  Pl. Resp. at 10–12.  Pursuant to 26 U.S.C. §§ 6320(c), 6330(c)(2)(B),  a taxpayer "may . . . raise at the hearing challenges to the existence or amount of the underlying liability for any tax period *if the person did not receive any statutory notice of*

---

the 2013 refund claims were filed on July 24, 2013, but in the February 19, 2016 Response, Plaintiff represents that the 2013 claims were filed on August 5, 2013.  *Compare* Gov't Reply at 17, *with* Compl. ¶ 15, *and* Pl. Resp. at 7.

*deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.*" 26 U.S.C. § 6330(c)(2)(B) (emphasis added). As such,

> [a]n issue may not be raised at the hearing if—
>
> (A)(i) the issue was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding; and
>
> (ii) the person seeking to raise the issue participated meaningfully in such hearing or proceeding[.]

26 U.S.C. § 6330(c)(4).

In this case, on December 2, 2005, after receiving notice from the IRS of the proposed TFRP assessment, a "Formal Written Protest" was submitted to the IRS, wherein Plaintiff argued that he was not "a person who was required to collect, account for and pay over business taxes" for Sundance. Gov't Ex. 5. Although the IRS disagreed with Plaintiff, nevertheless, Plaintiff's Protest was forwarded to the IRS's Appeals Office. Gov't Ex. 7. The IRS's Appeals Office denied Plaintiff's Protest, closing the case as "unagreed" and assessing the TFRP on March 3, 2008. Gov't Exs. 1–3, 9. Thereafter, Plaintiff forwarded a "Trust Fund Recovery Assessment Appeal" to the IRS. Gov't Ex. 17. On March 5, 2009, after determining that Plaintiff's second request for reconsideration "did not have any new information to warrant another Appeals review," the IRS issued to Plaintiff a notice of disallowance. Gov't Ex. 18. These acts demonstrate that Plaintiff had multiple opportunities to dispute the underlying tax liability and "participated meaningfully" in the appeals proceedings. *See* 26 U.S.C. § 6330(c)(2)(B).

Plaintiff also argues that the March 5, 2009 notice of disallowance was invalid, because of the defects contained in the October 25, 2008 Forms 843. Pl. Resp. at 12. But, a defective Form 843 does not toll the statute of limitations, if the claims were sufficient to apprise the IRS of the basis of a taxpayer's claims. *See Burlington N., Inc. v. United States*, 231 Ct. Cl. 222, 227–28 (1982) ("If a claim fairly apprises the Commissioner of the ground on which recovery is sought, then the claim is adequate for the purposes of bringing suit under section 7422(a)."). The IRS did not raise any issues with the October 25, 2008 Forms 843, but instead used the October 25, 2008 Forms 843 to consider the merits of Plaintiff's tax refund claims. Gov't Ex. 16. For this reason, the court has determined that the March 5, 2009 notice of disallowance was not invalid on the basis that the October 25, 2008 Forms 843 were defective.

Plaintiff's argument that the March 5, 2009 notice of disallowance was not sent by certified mail is without merit, as the notice includes, in bold, capitalized font, the words "**CERTIFIED MAIL**." Gov't Ex. 18. In addition, the IRS confirmed that standard procedures were followed in mailing the March 5, 2009 notice. Gov't Ex. 22 at ¶¶ 2–3. Moreover, Plaintiff admits that he received the March 5, 2009 notice of disallowance. *See Berger v. Comm'r*, 404 F.2d 668, 673 (3d Cir. 1968) ("[26 U.S.C. § 6532](a) authorizes a notice of deficiency to be sent by registered or certified mail. In authorizing such method of notice it does not forbid any other method. If a revenue agent personally delivers by hand a notice of deficiency to the taxpayer it could not rationally be suggested that the notice was invalid because it violated a requirement of subsection (a)."), *cert. denied*, 395 U.S. 905 (1969)). For these reasons, the court has determined that the

March 5, 2009 notice of disallowance was not invalid on the basis that it was not sent by certified mail.

Pursuant to the two-year statute of limitations period in 26 U.S.C. § 6532(a)(1), if Plaintiff desired to file suit in the United States Court of Federal Claims, he was required to do so no later than March 5, 2011. *See RHI Holding, Inc.*, 142 F.3d at 1460 ("[T]he taxpayer has two years from the date the notice of disallowance of the refund claim is mailed to file suit."). In this case, however, Plaintiff filed the Complaint on May 28, 2014, *i.e.*, more than two years after March 5, 2009, the date of the mailing of the notice of disallowance.

For these reasons, the court has determined that it does not have jurisdiction to adjudicate the October 25, 2008 tax refund claims alleged in the May 28, 2014 Complaint.

> b.  **The Court Does Not Have Jurisdiction To Adjudicate The July 24, 2013 Tax Refund Claims Alleged In The May 28, 2014 Complaint.**

Plaintiff's argument that the July 24, 2013 refund claims are "completely different" from the October 25, 2008 refund claims also is without merit. Both claims reference the same taxable periods, the same penalty, the same tax due, and for the first quarter, they refer to the same date of payment. *Compare* Gov't Exs. 10, 12, 14, *with* Gov't Exs. 19, 20, 21. The only difference is the amount of refund or abatement requested. Therefore, the court has determined that the second set of claims is a request for reconsideration of the IRS's denial of the first set of claims, but a request for such reconsideration, as a matter of law, does not toll the statute of limitations. *Compare Jones v. United States*, 26 Cl. Ct. 424, 425 (1992) (determining that where plaintiff's second set of refund claims are identical to the first set of refund claims "in all material respects," the second set of refund claims does not change the statute of limitations (citing 26 U.S.C. § 6532(a)(4)), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)), *and B. Altman & Co.*, 69 Ct. Cl. at 727 ("The second refund claim . . . raises no new issue, involves no additional assessment made subsequent to the filing and denial of the first, and could not by any possibility occasion a reopening of plaintiff's tax liability[.]"), *with Charlson Realty Co. v. United States*, 181 Ct. Cl. 262, 270 (1967) ("[T]he two claims are separate and distinct . . . the second claim alleges and asserts facts, grounds, and theories for recovery different from those set forth in the first claim."); *see also Pacetti v. United States*, 50 Fed. Cl. 239, 249 (2001) (determining that the filing of a second claim for an increased amount of refund for the same taxable periods does not alter the statute of limitations).

In addition, Plaintiff failed to satisfy the exception to the two-year statutory period, *i.e.*, a written agreement between the taxpayer and the IRS. *See* 26 U.S.C. § 6532(a)(2). The July 11, 2013 IRS letter does not meet the requirements of 26 U.S.C. § 6532(a)(2), as it only confirms that the IRS received Plaintiff's request for a CDP hearing and provides an explanation of the CDP hearing procedures. Pls. Exs. 71–73.

Even if the court were persuaded that the grounds for refund, set forth in the July 24, 2013 Forms 843, were different than those in the October 25, 2008 Forms 843, Plaintiff, nevertheless, failed to establish, by a preponderance of the evidence, that he filed a claim for refund with the IRS, prior to filing suit in this court. *See Alder Terrace, Inc.*, 161 F.3d at 1376. After a diligent search of IRS records, no documentation was found that confirmed receipt of the July 24, 2013

claims or the three $100 checks that allegedly accompanied them. Therefore, Plaintiff has failed to demonstrate that his refund claims were duly filed. *See Dalm*, 494 U.S. at 602 ("[U]nless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court.") (citations omitted); *see also Sun Chem. Corp.*, 698 F.2d at 1206 ("It is a well-established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit.").

For these reasons, the court has determined that it does not have jurisdiction to adjudicate the July 24, 2013 tax refund claims alleged in the May 28, 2014 Complaint.

## IV. CONCLUSION.

For the reasons discussed herein, the Government's December 8, 2015 Motion To Dismiss is granted. *See* RCFC 12(b)(1). The Clerk of the Court is directed to dismiss the May 28, 2014 Complaint and the Government's October 24, 2014 Counterclaim. *See Triton Group, Ltd. v. United States*, 10 Cl. Ct. 128, 134 (1986) ("It necessarily follows that when the plaintiff's claim is rejected because of a lack of jurisdiction, the defendant's counterclaim must be dismissed along with the plaintiff's complaint, without regard to the merits of the counterclaim."), *aff'd*, 818 F.2d 876 (Fed. Cir. 1987).

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**